Filed 7/10/14  P. v. Duckett CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B248718 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA056686) |
| v. | |
| HARVIE E. DUCKETT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eric P. Harmon, Judge.  Affirmed.

Thien H. Tran, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and Mary Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted Harvie E. Duckett of possession of a firearm with a prior violent conviction (Pen. Code, § 29900, subd. (a)(1)), and the trial court thereafter found Duckett had suffered various alleged prior convictions, including a conviction for robbery in 1990 that qualified as a strike. (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).) On appeal, Duckett claims ineffective assistance of counsel and sentencing error under the "Three Strikes" law. We affirm.

**FACTS**

On June 28, 2012, Los Angeles County Sheriff's Department Deputy Scott Woods went to a two-unit residential building on Beach Avenue in Lancaster, numbered respectively as 44418 and 44418 ½, to execute a search warrant. The face of the search warrant authorized police to search the apartment numbered 44418 ½. We do not see a copy of the warrant itself in the record, but Deputy Woods had received information that Duckett lived at the 44418 ½ apartment. When Deputy Woods arrived at the building on Beach Avenue, he went to the apartment numbered 44418 ½, where a tenant advised the deputy that Duckett actually lived at the apartment numbered 44418. Deputy Woods then proceeded to the apartment numbered 44418.

When Deputy Woods got to the front door of the apartment numbered 44418, he detained Duckett and put him in a patrol car. Deputy Woods then went back and walked into the apartment and "did a protective sweep." In so doing, Deputy Woods came into contact with Joy Jefferson, who identified herself as Duckett's spouse. Within a matter of "minutes," Deputy Woods obtained Jefferson's written consent to search the apartment numbered 44418, and obtained Duckett's written consent to search the apartment as well. During the search, Deputy Woods found a shotgun in a master bedroom closet, and methamphetamine in a nightstand next to the bed in the bedroom.

In July 2012, the People filed an information charging Duckett with three counts, respectively listed as follows: possession of a controlled substance, methamphetamine, with a loaded firearm (count 1; Health & Saf. Code, § 11370.1, subd. (a)), possession of a controlled substance, methamphetamine, for sale (count 2; Health & Saf. Code, § 11378), and of possession of a firearm with a prior violent conviction, to wit, robbery (count 3;

2

Pen. Code, § 29900, subd. (a)(1)). Further, the information alleged that Duckett suffered a prior robbery conviction in 1990 which qualified as a strike (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and that Duckett suffered five prior convictions with a prison term (Pen. Code, § 667.5, subd. (b)).

Before trial, Duckett filed a motion to suppress all evidence found in the apartment numbered 44418 on the ground that the police "did not have a lawful search warrant . . . . Nor did they have any other lawful exceptions to search [Duckett's] home . . . ." During a hearing on the motion, Deputy Woods testified that he had obtained Jefferson's and Duckett's written consents to search the apartment number 44418 before conducting the search which turned up the firearm and methamphetamine. Jefferson and Duckett both testified that they had not given consent to search the apartment. When shown a copy of her signed consent form on cross-examination, Jefferson conceded that it looked like her signature on the form. When shown a copy of his signed consent form on cross-examination, Duckett testified that it was not his signature on the form. Following the testimony, Duckett's counsel argued to the trial court that it should believe Jefferson's and Duckett's testimony that they had not signed the consent forms, and the prosecutor argued that the evidence showed they had.[1] After listening to the arguments, the trial court found that Deputy Woods's testimony regarding the signed consents was credible, and that Jefferson's and Duckett's denials that they had given consents was not credible.

In April 2013, the charges against Duckett were tried to a jury. During trial, Deputy Woods testified that, when he got to the door of the apartment numbered 44418, he told Duckett that he (Deputy Woods) "had a search warrant." A few moments later, during the afternoon recess, the following exchange ensued:

---

[1]     The record demonstrates that the validity of the search warrant itself was not placed at issue or decided at the evidence suppression hearing. Duckett filed a separate motion to quash the search warrant. In that motion, he requested the trial court to review the sealed affidavit in the search warrant application for probable cause. The motion to quash is not at issue on Duckett's current appeal.

"The Court: We're back on the record in People versus Duckett. Mr. Duckett is present. [Defense counsel] Ms. Lemberg is present. [The prosecutor] Mr. Hilton is present. The jurors and alternate jurors are outside. [¶] Anything either side wishes to add before they're brought in?

"Mr. Hilton: No, Your Honor.

"The Court: Okay. We'll resume direct examination and—

"Ms. Lemberg: The witness brought up the search warrant, and I thought we weren't going to be—I don't know.

"The Court: The witness brought up the search warrant only to the extent that they said they weren't going to search the residence pursuant to a valid—the validity of the search warrant is not an issue, and the lawfulness of the search warrant is not an issue, and we're not litigating that again.

"Ms. Lemberg: He did say it is valid. It was not.

"The Court: It is valid.

"Ms. Lemberg: The search warrant?

"The Court: Well, there's nothing to say that it's invalid.

"Ms. Lemberg: Well, it had the wrong address on it.

"The Court: The search warrant—I don't know that.

"Ms. Lemberg: Well, that's why they went in the first place and kicked in the door.

"The Court: I don't know that either. All I know is that there was a 1538.5 that was brought and denied. There's no motion before me pending that discusses anything about the invalidity of the search warrant, and that's not going to be before this jury. [¶] The time has come and passed to litigate issues of search and seizure. We've been over this.

"Ms. Lemberg: He said it was a valid search warrant. That's untruthful. It's not valid. They had the wrong address.

"The Court: He didn't say valid.

"Ms. Lemberg: Well—

4

"The Court:  Just hold on.  Don't say anymore.  [¶]  [A pause in the proceedings.] [¶]  The Court:  Okay.  We're back on the record.  I've reviewed the record and the witness says, 'We told him we had a search warrant, detained him.  I believe he was walking out to his car.'  So that's the extent of the testimony regarding the search warrant, and it doesn't open the door to litigate anything about the legitimacy of the search warrant so—

"Ms. Lemberg:  All right.

"The Court:  Okay?  So we'll bring everyone in."

Trial continued.  On April 17, 2013, the jury returned a verdict finding Duckett guilty as charged in count 3—possession of a firearm with a prior violent conviction. (Pen. Code, § 29900, subd. (a)(1).)  The jury was unable to reach a unanimous verdict on count 1—possession of a controlled substance with a loaded firearm (Health & Saf. Code, § 11370.1, subd. (a))[2] or on count 2—possession of methamphetamine for sale (Health & Saf. Code, § 11378).[3]  After the jury's verdict, Duckett waived jury trial on prior conviction allegations, and the trial court found the allegations to be true, including a finding that Duckett suffered a prior strike conviction (Pen. Code, §§ 667, subds. (b)-(i); 1170.12, subds. (a)-(d)), and five prior convictions with a prison term (Pen. Code, § 667.5, subd. (b)).  The trial court sentenced Duckett to a total aggregate sentence of nine years as follows:  an upper term of three years, doubled for the prior strike, plus one year for each of three prior prison terms.

---

[2]     The jurors' vote on count 1 was 11 to 1.  The record on appeal contains juror questions to the trial court indicating that there was some question about the meaning of the element that the firearm was available for "immediate" use.  (See CALCRIM No. 2303.)

[3]     The jurors' vote on count 2 was 9 to 3.  It appears from the jury instructions in the record on appeal that the jury was instructed on simple possession as a lesser offense of the charge of possession for sale.

DISCUSSION

**I.      Ineffective Assistance of Counsel**

Duckett contends his conviction must be reversed on the ground of ineffective assistance of counsel.  He argues his trial counsel provided ineffective assistance when he did not, during Deputy Woods's testimony at trial, renew the defense motion to suppress the items found in apartment number 44418.  Duckett argues his trial counsel should have argued that Duckett's consent to the search of the apartment was not voluntary because his consent was vitiated by Deputy Wood's statement at the front door that he "had a search warrant."  Duckett cites *People v. Baker* (1986) 187 Cal.App.3d 562, and similar cases in support of the proposition that a search "cannot be justified on the basis of consent given after an official asserts that he possesses a warrant." (*Id.* at p. 570, discussing *Bumper v. North Carolina* (1968) 391 U.S. 543.)  We are not persuaded that reversal is warranted.

*A.      The Governing Law*

Duckett's argument on appeal implicates a number of interrelated areas of law: (1) the requirement of specificity in a search warrant of the place to be searched; (2) the consent exception to a search warrant; (3) the voluntariness of consent; and (4) the two elements of ineffective assistance of counsel, i.e., deficient performance and resulting prejudice.

We find it the most efficient to move directly to the required element of prejudice under the constitutional test of ineffective assistance of counsel.  To prevail on a claim of ineffective assistance of counsel, a convicted defendant must demonstrate that his or her trial counsel's deficient performance resulted in prejudice, i.e., the defendant must show a reasonable probability that, but for counsel's failing, the result of the criminal proceeding would have been more favorable to the defendant. (See *Strickland v. Washington* (1984) 466 U.S. 668, 684, 693-694.)  Assuming that Duckett's trial counsel should have renewed the motion to suppress the evidence found in apartment number 44418 during trial, Duckett has not shown on appeal a reasonable probability that the result of his criminal case would have been different.  Had Duckett renewed the motion to suppress during

6

trial, on the theory that he consented to the search of his apartment because he felt there was no purpose in not giving his consent since the police had said they had a warrant, we see no probability that his renewed motion to suppress would have been granted. To make such a renewed motion, Duckett would necessarily have to acknowledge that he perjured himself at the hearing on his first motion to suppress when he testified he never gave his consent. Only then could he take the position that he did give consent, but that his consent was essentially coerced. We are satisfied that a motion to suppress based on a defendant recanting perjured testimony would not have succeeded.

Further, assuming the trial court would have found that Duckett's consent had not been voluntarily, all this would have done would be to place the search warrant back into the picture. Duckett's argument on appeal that the search warrant was unconstitutional under the Fourth Amendment because it identified the premises to be searched as 44418, rather than 44418 ½, is not persuasive. Duckett relies on a 1969 case from our Supreme Court (*Skelton v. Superior Court* (1969) 1 Cal.3d 144, 155) and a 1973 case from our Supreme Court (*People v. Dumas* (1973) 9 Cal.3d 871) in support of the proposition that a misstated address on a search warrant makes it invalid under the constitutional requirement that a warrant identify the place to be searched with specificity. Both cases pre-date the passage of Proposition 8. Much more recent search warrant decisions from our Supreme Court make it clear that a wrong address on a search warrant does not necessarily invalidate the warrant, so long as the officers who are executing the warrant are able to ascertain the premises to be searched, and there is little likelihood that the wrong premises will be searched. (See, e.g., *People v. Amador* (2000) 24 Cal.4th 387, 392-393, and cases cited therein.) Here, the record shows that Deputy Woods went to building on Beach Avenue to search premises in which Duckett resided. The deputy went to apartment number 44418 ½, where he learned that Duckett lived at 44418. The deputy then went to apartment number 44418. Inasmuch as the search warrant was valid, the search of Duckett's residence was valid pursuant to the warrant.

7

The record does not support Duckett's assertion on appeal that the trial court necessarily ruled that the search warrant was invalid when the court approved the search on the ground of consent. The record shows that the validity of the search warrant was not presented for the trial court's consideration at the hearing on Duckett's motion to suppress, the prosecution apparently opting to travel the path of consent. And, assuming that Duckett's counsel had challenged the validity of the search warrant, we see no reasonable probability that the trial court would have agreed. Again, any claim of ineffective assistance of counsel fails because Duckett has not shown the required element of prejudice.

## II.    Sentencing

Duckett contends the trial court abused its discretion in denying his motion to dismiss his prior strike conviction under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). We disagree.

In *People v. Williams* (1998) 17 Cal.4th 148 (*Williams*), the Supreme Court explained that a sentencing court's exercise of discretion under *Romero* is to be guided by the following standard: may the defendant, in light of his or her current crime, and his or her criminal history, background, character, and prospects, be deemed "outside the spirit" of the three strikes law, in whole or in part, and, hence, be treated as though he or she had not suffered the prior strike conviction. (*Williams, supra*, at p. 161.) When the factors set forth in *Williams* "manifestly support the striking of a prior conviction and no reasonable minds could differ," a failure to dismiss a prior strike constitutes an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 376-378.)

We do not find an abuse of discretion in Duckett's current case. A jury convicted Duckett of possessing a firearm with a prior violent conviction, and we reject Duckett's attempt on appeal to minimize the seriousness of his crime. While the nature of the act of possessing a firearm is not condemnable when the possessor is your everyday, ordinary, citizen, possession of a firearm by a person with a prior violent conviction is a serious offense. Further, Duckett's criminal history shows that he has not responded to shorter sentences. His adult criminal history shows a 1982 conviction for receiving stolen

property; a 1984 conviction for taking a vehicle without the owner's consent; a 1988 conviction for battery and battery on a peace officer; a 1989 conviction for accessory to murder; a 1989 conviction for use of a controlled substance; a 1990 conviction for robbery (his strike prior); a 1992 conviction for second degree burglary; a 1994 conviction for driving on a suspended license; a 1996 conviction for driving without a license; a 1996 conviction for driving on a suspended license; a 1998 conviction for giving false identification to a police officer; a 1999 conviction for providing false evidence of registration; a 2000 conviction for perjury; a 2002 conviction for driving on a suspended license; a 2002 conviction for possession of narcotics; a 2003 conviction for possession of narcotics; a 2006 conviction for transporting/selling controlled substances; a 2010 conviction for driving on a suspended license; and his current offense. Duckett has accumulated 11 misdemeanor convictions and 8 felony convictions as an adult. In addition, he has violated probation or parole on numerous occasions.

In light of all of the factors properly considered in addressing whether to impose a sentence under the Three Strikes law, the trial court did not abuse its discretion in denying Duckett's *Romero* motion. The record summarized above does not "manifestly support" the dismissal of Duckett's prior strike convictions because he is not a defendant who *must be* deemed "outside the spirit" of the Three Strikes law. On the contrary, Duckett's current offense and his criminal history support sentencing under the Three Strikes law.

## DISPOSITION

The judgment is affirmed.

BIGELOW, P.J.

We concur:

RUBIN, J.                GRIMES, J.

9